# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5862 | **DATE** | 2/12/2004 |
| **CASE TITLE** | Gizaw vs. IL Dept of Public Aid | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held and continued to 05/06/04 at 9:00 a.m. For the reasons stated in the attached memorandum opinion, the Court hereby grants defendants' motions for summary judgment on the hostile work environment claim, the national origin discrimination claim and the defendants' motion to dismiss the section 1983 claim. The motion for summary judgment on the Title VII retaliation claim is denied without prejudice. Defendants' motions to strike are hereby denied as moot. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 13 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. Memorandum Opinion served in open Court. | | | 29 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MW6 | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AYNIE GIZAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02 C 5862 |
| | ) | |
| ILLINOIS DEPARTMENT OF PUBLIC AID, | ) | |
| CHUCK KIRIAN, in his individual capacity, | ) | |
| ROBERT CARBINE, in his individual capacity, | ) | |
| SHARON MARKETTE-MALONE, in her | ) | |
| individual capacity, and SHARON JONES, in | ) | |
| her individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the Court on Defendants Illinois Department of Public Aid's, Robert Carbine's, Sharon Markette-Malone's and Sharon Jones' motion for summary judgment and motion to strike portions of Plaintiff's Rule 56.1 Statement of Facts. For the reasons stated below we grant Defendants' motion for summary judgment in its entirety.

## BACKGROUND

Plaintiff, Aynie Gizaw ("Gizaw"), was born in Ethiopia. She moved to the United States in 1969 and became a citizen in 1985. On June 16, 1999, Gizaw began working for Defendant Illinois Department of Public Aid ("IDPA") as Office Coordinator for the Division of Child

1

Support and Enforcement ("DCSE").

in Region IV. Defendant Robert Carbine ("Carbine") was the Zone Manager for DCSE's Regions IV, V, and VI, until he retired on December 31, 2002. Carbine reported to Charles Kirian ("Kirian") who was the manager of DSCE's Cook County Field Operations. Carbine and Kirian are both Caucasian males. Gizaw's first supervisor at DCSE was Verill Clark ("Clark") who is of African-American descent. Defendant Sharon Markette-Malone ("Malone") is of African-American descent. In 1999 Malone was promoted to regional manager over field operations in the DCSE. Defendant Sharon Jones ("Jones"), is of African-American descent. She was promoted to the Office Administrator of Region IV in February of 2001. Jones apparently reported to Karen Lewis ("Lewis") and Lewis reported to Malone.

On July 18, 2000, Lewis, Clark, Malone, and Thomas Harlson ("Harlson") who was Zone Manager, decided to place Gizaw on a work improvement plan ("WIP"). Defendants claim that the purpose of the WIP was to assist Gizaw in improving her productivity at work. On July 18, 2000 Gizaw wrote a letter to Harlson complaining about the WIP and claiming that there was possible harassment. Gizaw stated in the letter that Clark referred to her as "the European with the red-hair." After Gizaw complained about the WIP, the WIP was not implemented. Between September 15, 2000 and October 20, 2000 Clark cited Gizaw for fraudulently signing in as if on time, failing to complete an assignment in a timely manner, misuse of work time, and failure to follow the instructions of her supervisor. Clark informed Gizaw that she was being counseled for her failure to complete the assignments and for the misuse of work time. Clark issued an oral reprimand for the failure to follow her supervisors' instructions. Malone upheld the counseling and the oral reprimand. Gizaw was given a positive evaluation on her 2000 yearly evaluation.

After Jones' promotion in February of 2001 Clark went on medical leave and Jones began supervising Gizaw. Defendants claim that on February 22, 2001, Jones held a meeting for OCs, including Gizaw, and informed the OCs that they had to notify their supervisor or their supervisor's supervisor orally or in writing if they needed to leave the work area. Gizaw contends that this policy was routinely disregarded by employees and that employees often went to see friends during work ours without permission without being disciplined. Gizaw was injured in a bus accident and was on medical leave from March 2, 2001 to June 11, 2001. On August 24, 2001, Jones sent Gizaw an email commending her on a job well done. Gizaw was given a positive evaluation by Jones, Lewis, and Clark on Gizaw's yearly evaluation for 2001 on September 28, 2001. Defendants claim that on February 26, 2002 Gizaw turned the ringer off on her phone and was not answering her phone which was part of her job. On that day Malone sent an e-mail to all staff informing them that all phones must be answered. Malone claims that on February 28, 2002, despite her warning, Gizaw continued to turn off her ringer and did not answer her pone. According to Malone Gizaw failed to complete assignments in a timely manner that were due on Ferbruary 26, 2002 and March 1, 2002.

On March 12, 2002 Gizaw had lunch with two co-workers. During lunch Gizaw apparently had an argument with Darlene Esposito ("Esposito"). Gizaw claims that Esposito made an insulting comment about Gizaw's "African place of birth." (SAF 297). Later in the afternoon around 2:45 P.M. Gizaw and Esposito left their work area to discuss their argument earlier in the day. Defendants claim that Gizaw did not ask her supervisor for permission to leave the work area and that her break was not scheduled until 3:00 p.m. The argument began again and Gizaw claims that Esposito pushed her into the wall injuring Gizaw's back and neck.

3

Defendants claim that at approximately 2:50 p.m. Gizaw and Esposito re-entered the work area yelling and hollering at each other. Jones told Malone about the incident and Gizaw was taken to Malone's office where she was asked to write a report about the incident. Gizaw claims that Defendants refused to let her leave work to seek medical attention. Defendants claim that Gizaw never asked to leave to seek medical attention and that after work Gizaw did not seek any medical attention. A referral of the incident between Gizaw and Esposito was sent to the Office of Inspector General Bureau of Internal Affairs ("OIG"). On March 13, 2002 Gizaw went to work and in the morning requested sick leave for the rest of the day which Malone denied. On March 14, 2003 Gizaw took a sick day in order to see her personal physician. On March 15, 2002 Gizaw took a vacation day.

On March 27, 2002 Jones counseled Gizaw in a meeting regarding her failure to complete assignments in a timely manner. On March 27, 2002 Gizaw prepared a letter which she sent to Kirian complaining about her treatment by her supervisors. On March 27, 2002 Gizaw sent a memo to Jones, Carbine, Malone, and Lewis indicating that the alleged harassment by her supervisors continued to occur. On March 28, 2002 Jones issues Gizaw an oral reprimand for her failure to complete assignments in a timely fashion. On April 3, 2002 Jones sent a memo to Gizaw informing her that there would be a pre-disciplinary meeting to address Gizaw's continued inability to meet deadlines for her assignments. On April 4, 2002 Gizaw was issued a written reprimand for failing to complete her assignments in a timely fashion. On April 11, 2002 Gizaw filed a grievance alleging that the written reprimand was unwarranted. Another pre-disciplinary meeting was held on April 15, 2002 to address Gizaw's alleged inability to follow instructions and complete assignments. Kirian, Carbine, and Gizaw were present at the meeting.

4

Defendants contend that although Gizaw complained about her supervisors, she not claim that the harassment was because of her national origin. On April 16, 2002 there was another pre-disciplinary meeting. Gizaw, a union representative, the union president, Jones, Lewis, and Malone were in attendance. On April 29, 2002 the IDPA's EEO office approved a request for a three day suspension for Gizaw. Gizaw served the three day suspension beginning on April 29, 2002. On May 6, 2002 there was another pre-disciplinary meeting. In attendance were Gizaw, her union representative, Jones, and Malone. Defendants contend that Gizaw did not claim at the meeting that she was being harassed because of her national origin.

On May 6, 2002 Gizaw filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging discrimination based on race, color, and national origin and retaliation for complaining about the discrimination. On May 10, 2002 IDPA's EEO office approved a request to suspend both Gizaw and Esposito seven days for the March 12, 2002 incident. On May 17, 2002 Gizaw filed a grievance requesting that the suspension be rescinded. Defendants contend that Gizaw did not indicate in the grievance that she was being discriminated against by her supervisors. On May 30, 2002 Gizaw began serving her suspension. Defendants claim that the IDPA EEO office received a letter from the EEOC on May 17, 2002 informing them of the pending charge brought by Gizaw. On May 29, 2002 Gizaw filed an additional charge with the EEOC. Malone denied Gizaw's grievance. On August 1, 2002 at the third level of review of the grievance the IDPA decided to reduce the suspension from seven to five days. On August 16, 2002 Gizaw filed the instant action. On September 13, 2002 Gizaw filed an amended complaint alleging national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count I), retaliation in violation of

Title VII (Count II), denial of equal protection as a class of one in violation of 42 U.S.C. § 1983 ("Section 1983") (Count III).

On November 1, 2002 Gizaw received her yearly evaluation. Jones asserted in the evaluation that Gizaw did not meet her job expectations for two out of eight areas. On January 1, 2003 Gizaw was assigned to a new position as the full-time front desk person. Gizaw contends that the front desk job is unusually difficult because it involves contact with clients that are angry and upset. Gizaw contends that she was assigned to the front desk position as a form of punishment because of her national origin. On April 1, 2003 Jones changed jobs and Jerena Hope-Williams, an African-American female, became supervisor.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a

motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Gizaw's briefs are convoluted in regards to her Title VII claims. In her answer to the instant motion she clearly indicates that she is pursuing a hostile work environment claim. However, in her complaint she entitles Count I as "National Origin Discrimination" and makes references to her meeting her employer's expectations and alleges that her employer's reasons for action against her were a pretext for discrimination which are elements for a national origin discrimination claim. Her answer rambles on in an unconnected fashion and it is unclear from her answer exactly what is her intention. Her statement of additional facts is also inconsistent in that it contains allegations in support of each type of claim. Defendants are also apparently unclear as to Gizaw's intentions and the Defendants' briefs make references to the requirements for each type of claim. We shall generously interpret Gizaw's "shotgun" approach and will deem her to be pursuing both types of claims.

In addition, as indicated above, on September 13, 2002 Gizaw filed an amended complaint and in the amended complaint she did not list Kirian as a named defendant in the caption or in the introductory section for each count. However, in parts of her answer to the

instant motion she makes allegations specifically against Kirian and she focuses exclusively at points on the alleged misconduct by Kirian. She also lists Kirian as a defendant in all her briefs filed in connection with the instant motion. Gizaw has not sought leave to file a second amended complaint and include Kirian as a defendant once again. Thus, we will disregard her allegations against Kirian except to the extent that his actions impact the liability of other defendants, and presume that her continued focus on Kirian is an inadvertent mistake on her part.

Defendants have also filed a motion to strike Gizaw's response to Defendants' statement of material facts and have moved to strike Gizaw's 56.1 statement of additional facts. Local Rule 56.1 is intended to assist the court and make its determination for a summary judgment more efficient by requiring each party to supply a statement of material facts and a response to the opposing parties' facts. The statements of facts and responses should contain only the material facts. They are not a proper place to present legal arguments or conclusions and all facts and responses should be supported by proper citations to admissible evidence. We agree with Defendants that Gizaw's 56.1 response and her statement of additional facts are filled with improper statements, improper citations, and legal argument. We shall touch on a few examples and admonish Gizaw for wasting the court's time and the Defendants' time spent sifting through her poorly written 56.1 response and statement of additional facts and wasting the court's time in addressing Defendants' meritorious motions to strike.

Many of the paragraphs in the additional statement of facts are completely without value because Gizaw makes allegation after allegation of mistreatment by her supervisors without including any date or even an approximate time period when they occurred. Also, in portions of her statement of additional facts Gizaw makes general allegations against her "supervisors" without specifying supervisor's names. In paragraph 251 of her statement of additional facts Gizaw merely states that the "Defendants imposed unreasonable deadlines by which Plaintiff was

8

to complete assignments." That is Gizaw's opinion and conclusion, but it has no place in a statement of material facts. In paragraph 300 Gizaw states that she "believes that her supervisors' pattern of mistreatment of Plaintiff gave Esposito license to treat her with disrespect and hostility because of Plaintiff's national origin." This statement may be a statement of fact regarding Gizaw's belief, but it is essentially argument which does not belong in a statement of additional facts. To the extent that it is an allegation of her belief it is not material and likewise is inappropriate. In her 56.1 response Gizaw repeatedly fails to provide a citation for her denials. For instance, she disputes numbers 59, 60, 62, 66, 68, and 69 of Defendants' factual statement, but Gizaw fails to provide a single citation to support any of the denials. We shall not go further into detail at this juncture regarding Defendants' motions to strike Gizaw's 56.1 response and her statement of additional facts. Where a dispute is determinative for an issue we will address specific 56.1 additional facts or responses in the discussion below. To the extent that Defendants' remaining points in their motions to strike are left unanswered, the motions to strike are denied as moot.

## I. Title VII Hostile Work Environment Claim

Gizaw claims that she was harassed at work because of her national origin. Title VII prohibits an employer from maintaining a workplace that is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations omitted)(quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986)). A hostile work environment claim can be based upon harassment due to a plaintiff's race, gender, religion, or national origin. *Venters v. City of Delphi*, 123 F.3d 956, 975 (7th Cir. 1997).

9

Factors considered in determining whether there is a hostile work environment include: 1) the "frequency of discriminatory conduct," 2) "its severity," 3) whether conduct is "physically threatening or humiliating" or merely offensive, 4) whether conduct "unreasonably interferes with [the plaintiff's] work performance," and 5) the "social context in which events occurred." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002). For a hostile work environment claim a plaintiff must establish that she subjectively believed the environment to be hostile and that the belief was reasonable. *Haugerud v. Amery School Dist.*, 259 F.3d 678, 693 (7th Cir. 2001).

Gizaw claims that "Jones, Malone, and Lewis stared at her throughout the day, subjected her to illegitimate deadlines and discipline, and harassed her throughout abusive and hostile treatment." (Ans. 6). Gizaw claims that she was "oppressively scrutinized, criticized and yelled at by her supervisors in front of her coworkers." (Ans. 10). According to Gizaw Jones called her into her office and told her not to stir her tea and not to wear lipstick. Gizaw also alleges that when co-workers would stop by her desk to say hello Lewis and Malone would yell across the room telling her that she was not allowed to speak with anyone until she was on her break. Gizaw claims that none of her coworkers were subjected to such harsh treatment. Gizaw claims that the conditions caused her to become "mentally, emotionally, and physically drained." (Ans. 9) She alleges that sometimes she broke down in tears at work and that she lost weight and was unable to sleep because of the work conditions. (Ans. 9).

Gizaw also claims that there was a hostile work environment because of comments allegedly made by her supervisors outside her presence that were passed on to Gizaw by co-workers. She claims that on an elevator Gizaw's coworker overheard Malone talking about Gizaw and say "Oooh, that red-haired African bitch got her white friend." (SAF 256). Gizaw claims that one of her co-workers heard Lewis tell someone "Aynie is too stupid to understand

10

English because she's a poor Ethiopian." (SAF 258). Gizaw also claims that a co-worker heard Jones talking about Gizaw and state: "I'm going to work her like the slave she is." (SAF 232). In addition Gizaw alleges that coworkers related to her other negative conversations about Gizaw amongst her supervisors.

Other than the statement allegedly made by Clark, none of the statements allegedly made by Gizaw's supervisors about her national origin were made in Gizaw's presence. The Seventh Circuit has "declined to find discrimination" based upon statements made outside the presence of the plaintiff. *Ngeunjuntr v. Metropolitan Life Sins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998); *Adusumilli v. City of Chicago*, 164 F.3d 353, 362 (7th Cir 1998)(indicating that "second hand harassment" is not deemed to have as big of an impact as direct harassment). Also, Gizaw only alleges a few isolated comments made by her supervisors, which do not create a pervasive hostile environment. *See id.*(stating that isolated comments are not sufficient for a hostile work environment claim); *Ngeunjuntr*, 146 F.3d at 467 (stating that isolated comments are not sufficient for a hostile work environment claim).

None of the allegations presented by Gizaw are severe. The alleged comments regarding her lipstick and the stirring of tea, if true, could be considered odd and offensive. However, they are not sufficiently severe and they should not have reasonably interfered with Gizaw's work. Gizaw complains that her supervisors scolded her not to talk to co-workers during work hours. Such comments may have made Gizaw feel uncomfortable, but they should have made it easier for her to complete her work rather than hindering her. Gizaw complains about being disciplined in front of her co-workers. Although, an employee being disciplined in such a manner may consider it an insult and ridicule, if the employer feels that the discipline is warranted then there is no law that prohibits the employer from disciplining the employee in front of co-workers. Perhaps an extremely conscientious employer will quietly pull an employee aside and address the

11

employer's concerns, but such actions are certainly not required under Title VII. Gizaw, argues that her deadlines were unreasonable. However, she has not presented evidence upon which a reasonable trier of fact could find the deadlines unreasonable. Also, the courts should be hesitant about delving too far into the minute aspects of the employer's operations and determine whether the deadlines were reasonable. The Seventh Circuit has repeatedly stated that the courts are not intended to serve as a "super personnel department" to be used to review each and every decision made by an employer. *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 532 (7th Cir. 2003). Therefore, we find that the alleged incidents of harassment are not sufficiently frequent or severe to constitute pervasive harassment or to interfere with her work. Therefore, we grant summary judgment on the hostile work environment claim.

II. National Origin Discrimination Claim

As indicated above, because of the ambiguities in Gizaw's complaint and her arguments relating to the instant motion, we have liberally construed her claims to include a national origin discrimination claim. A plaintiff can defeat a summary judgment claim brought by an employer in a Title VII discrimination case by proceeding under the direct or indirect method of proof in order to defeat the motion. *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). Under the direct method, the plaintiff can show through direct or circumstantial evidence that the alleged harmful action of the employer was "motivated by an impermissible purpose, such as [his] race or national origin." *Id.* Under the indirect method the plaintiff must establish a *prima facie* case which will allow an inference of discrimination. *Id.* To establish a *prima facie* case of race discrimination a plaintiff must show: "(1) that she was a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she experienced an adverse employment action; and (4) that similarly situated individuals were treated more favorably."

12

*Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002). Gizaw, does not present evidence sufficient to proceed under the direct method of proof and will therefore need to proceed under the indirect method.

If a *prima facie* case is established then there is a rebuttable presumption of discrimination and the employer is required to offer a "legitimate, non-discriminatory reason for the adverse employment action." *Cianci v. Pettibone Corp.*, 152 F.3d 723, 726 (7th Cir. 1998). If the employer provides such a reason, the plaintiff must then show that the reason alleged by the employer is merely a pretext for discrimination. *Id.*

The only actions taken by IDPA against Gizaw that would constitute an adverse employment action would be the three day suspension she began serving on April 29, 2002 and the five day suspension relating to the Esposito incident. *See Grube v. Lau Industries, Inc.*, 257 F.3d 723, 729 (7th Cir. 2001)(stating that "unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions."). Gizaw has not pointed to sufficient evidence for a reasonable trier of fact to conclude that Gizaw was meeting the legitimate expectations of Defendants. Gizaw admits pursuant to Local Rule 56.1 that on March 12, 2002 at around 2:45 P.M. Gizaw left the work area with Esposito. (RSF 78). Gizaw admits pursuant to Local Rule 56.1 that she did not tell her supervisor that she was leaving her work areas. (RSF 79). Gizaw admits pursuant to Local Rule 56.1 that her work break was not until 3:00 p.m. (RSF 80). Defendants have offered evidence indicating that Gizaw and Esposito returned to the work area while engaging in a loud verbal argument. Gizaw has not offered any evidence which would indicate otherwise. Gizaw admits pursuant to Local Rule 56.1 that on December 21, 1999 Lewis issued a memo indicating that all Region IV clerical staff must advise their supervisor if leaving the work area. (SF 21). Gizaw responds by providing her own unsubstantiated opinion that in general personnel commonly left

the work areas without disciplinary consequences. (SAF 219). Gizaw does not provide any specific incidents or indicate how she knows that the persons never suffered a disciplinary action or even if the supervisors discovered that the persons that Gizaw had in mind left the work area without permission. Gizaw also responds that the policy was changed to allow OCS to go and communicate with other OCs. (RSF 21). Even were this so Gizaw's response does not contend that an OC was allowed to leave the work area to conduct conversations regarding personal matters. Gizaw also admits pursuant to Local Rule 56.1 that she attended a meeting on February 22, 2001 and understood that there was a policy requiring her to notify her supervisor before leaving her work area. (RSF 44). In regards to the three day suspension, Defendants have also provided ample evidence that the suspension was warranted. *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 -80 (7th Cir.1997)(stating that "it is no business of a court in a discrimination case to decide whether an employer demands 'too much' of his workers" as long as the employer presents enough evidence that the expectations were not bona fide"). Based upon the evidence no reasonable finder of fact could conclude that Defendants' expectations were not bona-fide.

An employee is similarly situated if the employee "is one who is 'directly comparable to [the plaintiff] in all material respects.'" *Rogers v. City of Chicago*, 320 F.3d 748, 755 (7th Cir. 2003)(quoting *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002)). Gizaw has also failed to point to a similarly situated employee that was treated differently. Defendants correctly point out that the only similarly situated employee in regards to the Esposito incident was Esposito and Esposito was suspended for seven days which was the same as Gizaw's original suspension before it was reduced. Gizaw has failed to present evidence regarding an employee that is directly comparable to Gizaw.

Finally, even if Gizaw were able to establish a *prima facie* case Defendants have provided

14

legitimate non-discriminatory reasons for the actions taken against Gizaw and Gizaw has not provided sufficient evidence for a reasonable finder of fact to find that Defendants' given reasons are a pretext. The Esposito incident and Gizaw's alleged work deficiencies disciplinary history are well documented by Defendants. The main evidence presented by Gizaw in support of her pretext burden are the statements allegedly made by her supervisors. For examples Gizaw claims that on an elevator Gizaw's co-worker overheard Malone talking about Gizaw and say "Oooh, that red-haired African bitch got her white friend" (SAF 256), that one of her coworkers heard Lewis tell someone "Aynie is too stupid to understand English because she's a poor Ethiopian" (SAF 258), and that a coworker overheard Jones talking about Gizaw and state: I'm going to work her like the slave she is." (SAF 232). Gizaw also claims that someone overheard a conversation. In that conversation Malone allegedly stated: " [Gizaw] doesn't look African. She probably has contacts and extensions." Jones allegedly stated "She is too slow, takes her too long to catch on. If it wasn't for her snake-like accent she would be nobody." Gizaw does not allege more than one or two isolated comments by any particular supervisor. Such isolated comments are not sufficient to establish pretext. There is no indication by Gizaw that any of the comments were made in coordination with any work-related decision. Also, we note that the alleged comment made by Jones that she was going to work Gizaw "like the slave she is" is more applicable to a race discrimination claim, but Gizaw has indicated that she is solely proceeding upon the theory of national origin discrimination. Therefore, we find that even if Gizaw could establish a *prima facie* case, she has not presented sufficient evidence for a reasonable finder of fact to conclude that Defendants' reasons were a pretext.

In addition Gizaw has not shown that any of the Defendant supervisors had authority to

15

suspend her. Pursuant to Local Rule 56.1 Gizaw admits that individual supervisors have no authority to impose discipline above an oral reprimand. (*See* RSF 68, 69 (evasive denials and no supporting citations for denials)). The Division of Personnel and Administrative Services is solely responsible for such discipline. (RSF 68). Therefore, we grant summary Judgment on the national origin discrimination claim.

### III. Title VII Retaliation

Gizaw also claims that Defendants discriminated against her in violation of Title VII. However, the parties' arguments pertain to obsolete law. The arguments focus on the old Title VII retaliation analysis which requires a showing of a causal connection. *See Rogers v. City of Chicago*, 320 F.3d 748, 755 (7th Cir. 2003)(stating that the Seventh Circuit introduced a new analysis for Title VII retaliation claims and that "*Stone* provides the governing rule in this jurisdiction.); *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002)(indicating that *Stone* introduced new analysis). We shall not proceed at this juncture to address the retaliation claim because if we were to conduct analysis under the correct law and ruled against Gizaw it would be unfair because she has not had an opportunity to respond to specific points of the correct law. Therefore, we deny the motion for summary judgement on the Title VII retaliation claim without prejudice. Defendants are given until March 1, 2004 to submit a new motion on this issue if they wish. Gizaw is given until March 15, 2004 to respond. The reply will be due by March 22, 2004.

### IV. Section 1983 Claim

Gizaw claims that the individual defendants violated her equal protection rights and she seeks to proceed under the "class of one" theory. To proceed under the "class of one" equal protection theory a plaintiff must establish that he was: "'(1) intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment,' or (2) 'that the government is treating unequally those individuals who are *prima facie* identical in all relevant respects, and that the cause of the differential treatments is a totally illegitimate animus toward the plaintiff by the defendants." *Nevel v. Village of Schaumburg*, 297 F.3d 673, 681 (7th Cir. 2002)(quoting *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001)).

In this case Gizaw continues only to make generalized accusations such asserting in her answer that Defendants discriminated against Gizaw because of their "spiteful, ill-will toward Plaintiff", but Defendants have correctly pointed out the absence of evidence regarding differential treatment of similarly situate employees. *See Weeks v. Samsung Heavy Industries Co., Ltd.*, 126 F.3d 926, 939 (7th Cir. 1997)(stating that "a plaintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment.").

Also, Gizaw has not presented evidence that Carbine was personally involved in the decision to give her suspensions. The doctrine of *respondeat superior* is not applicable in a Section 1983 action. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Therefore, in order to hold a defendant liable in his individual capacity the individual defendant must be "personally responsible for the deprivation of a constitutional right," which can be illustrated by the fact that the defendant "directed the conduct causing the constitutional violation," the violation "occurred with his knowledge or consent," or the defendant acted with "'deliberate, reckless indifference' to the conduct of subordinates." *Id.* Gizaw has not provided any specific

17

facts that would indicate that Carbine was prejudiced against Gizaw and she has not shown that he stood idly by or turned a blind eye and allowed the discrimination to proceed. Also, in regards to Carbine, Jones, and Malone as stated above and admitted by Gizaw Defendants point out that individual supervisors have no authority to impose discipline above an oral reprimand. Therefore, we grant the summary judgment on the Section 1983 claim.

## CONCLUSION

Based on the foregoing analysis we grant the summary judgment on the hostile work environment claim, the national origin discrimination claim, and the Section 1983 claim. The motion for summary judgment on the Title VII retaliation claim is denied without prejudice. We grant Defendants' motions to strike in part and to the extent that we had not addressed the motions to strike, they are denied as moot.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 12, 2004