JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5862 | **DATE** | 5/10/2004 |
| **CASE TITLE** | Gizaw vs. IL Dept of Public Aid | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated on the attached memorandum opinion, the Court hereby grants defendants' motion for summary judgment. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | MAY 1 1 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. Judge's staff mailed Memorandum Opinion. | | GMA docketing deputy initials | 35 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | MW6 | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| AYNIE GIZAW, | ) | **DOCKETED** |
| Plaintiff, | ) | MAY 1 1 2004 |
| v. | ) No. 02 C 5862 | |
| ILLINOIS DEPARTMENT OF PUBLIC AID, CHUCK KIRIAN, in his individual capacity, ROBERT CARBINE, in his individual capacity, SHARON MARKETTE-MALONE, in her individual capacity, and SHARON JONES, in her individual capacity, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the Court on Defendants Illinois Department of Public Aid's, Robert Carbine's, Sharon Markette-Malone's and Sharon Jones' motion for summary judgment on Plaintiff's Title VII retaliation claim. For the reasons stated below we grant Defendants' motion for summary judgment.

## BACKGROUND

Plaintiff, Aynie Gizaw ("Gizaw"), was born in Ethiopia. She moved to the

United States in 1969 and became a citizen in 1985. On June 16, 1999, Gizaw began working for Defendant Illinois Department of Public Aid ("IDPA") as Office Coordinator ("OC") for the Division of Child Support and Enforcement ("DCSE"). in Region IV. Defendant Robert Carbine ("Carbine") was the Zone Manager for DCSE's Regions IV, V, and VI, until he retired on December 31, 2002. Carbine reported to Charles Kirian ("Kirian") who was the manager of DSCE's Cook County Field Operations. Carbine and Kirian are both Caucasian males. Gizaw's first supervisor at DCSE was Verill Clark ("Clark") who is of African-American descent. Defendant Sharon Markette-Malone ("Malone") is of African-American descent. In 1999 Malone was promoted to regional manager over field operations in the DCSE. Defendant Sharon Jones ("Jones"), is of African-American descent. She was promoted to the Office Administrator of Region IV in February of 2001. Jones apparently reported to Karen Lewis ("Lewis") and Lewis reported to Malone.

On July 18, 2000, Lewis, Clark, Malone, and Thomas Harlson ("Harlson") who was Zone Manager, decided to place Gizaw on a work improvement plan ("WIP"). Defendants claim that the purpose of the WIP was to assist Gizaw in improving her productivity at work. On July 18, 2000 Gizaw wrote a letter to Harlson complaining about the WIP and claiming that there was possible harassment. Gizaw stated in the letter that Clark referred to her as "the European with the red-hair." After Gizaw complained about the WIP, the WIP was not implemented. Between September 15, 2000 and October 20, 2000 Clark cited

Gizaw for fraudulently signing in as if on time, failing to complete an assignment in a timely manner, misuse of work time, and failure to follow the instructions of her supervisor. Clark informed Gizaw that she was being counseled for her failure to complete the assignments and for the misuse of work time. Clark issued an oral reprimand to Gizaw for failure to follow her supervisors' instructions. Malone upheld the counseling and the oral reprimand. Gizaw was given a positive evaluation on her 2000 yearly evaluation. After Jones' promotion in February of 2001 Clark went on medical leave and Jones began supervising Gizaw. Defendants claim that on February 22, 2001, Jones held a meeting for OCs, including Gizaw, and informed the OCs that they had to notify their supervisor or their second line supervisor orally or in writing if they needed to leave the work area. Gizaw contends that this policy was routinely disregarded by employees and that employees often went to see friends during work hours without permission and without being disciplined. Gizaw was injured in a bus accident and was on medical leave from March 2, 2001 to June 11, 2001. On August 24, 2001, Jones sent Gizaw an e-mail commending her on a job well done. Gizaw was given a positive evaluation by Jones, Lewis, and Clark on Gizaw's yearly evaluation for 2001 on September 28, 2001. Defendants claim that on February 26, 2002 Gizaw turned the ringer off on her phone and was not answering her phone which was part of her job. On that day Malone sent an e-mail to all staff informing them that all phones must be answered. Malone claims that on February 28, 2002, despite her warning, Gizaw continued to turn off her ringer and

did not answer her phone. According to Malone Gizaw failed to complete assignments in a timely manner that were due on Ferbruary 26, 2002 and March 1, 2002.

On March 12, 2002 Gizaw had lunch with two co-workers. During lunch Gizaw apparently had an argument with Darlene Esposito ("Esposito"). Gizaw claims that Esposito made an insulting comment about Gizaw's "African place of birth." (SAF 297). Later in the afternoon around 2:45 P.M. Gizaw and Esposito left their work area to discuss their argument earlier in the day. Defendants claim that Gizaw did not ask her supervisor for permission to leave the work area and that her break was not scheduled until 3:00 p.m. The argument began again and Gizaw claims that Esposito pushed her into the wall injuring Gizaw's back and neck. Defendants claim that at approximately 2:50 p.m. Gizaw and Esposito re-entered the work area yelling and hollering at each other. Jones told Malone about the incident and Gizaw was taken to Malone's office where she was asked to write a report about the incident. Gizaw claims that Defendants refused to let her leave work to seek medical attention. Defendants claim that Gizaw never asked to leave to seek medical attention and that after work Gizaw did not seek any medical attention. A referral of the incident between Gizaw and Esposito was sent to the Office of Inspector General Bureau of Internal Affairs ("OIG"). On March 13, 2002 Gizaw went to work and in the morning requested sick leave for the rest of the day which Malone denied. On March 14, 2002 Gizaw took a sick day in order to see her

personal physician. On March 15, 2002 Gizaw took a vacation day.

On March 27, 2002 Jones counseled Gizaw in a meeting regarding her failure to complete assignments in a timely manner. On March 27, 2002 Gizaw prepared a letter which she sent to Kirian complaining about her treatment by her supervisors. On March 27, 2002 Gizaw sent a memo to Jones, Carbine, Malone, and Lewis indicating that the alleged harassment by her supervisors continued to occur. On March 28, 2002 Jones issues Gizaw an oral reprimand for her failure to complete assignments in a timely fashion. On April 3, 2002 Jones sent a memo to Gizaw informing her that there would be a pre-disciplinary meeting to address Gizaw's continued inability to meet deadlines for her assignments. On April 4, 2002 Gizaw was issued a written reprimand for failing to complete her assignments in a timely fashion. On April 11, 2002 Gizaw filed a grievance alleging that the written reprimand was unwarranted. Another pre-disciplinary meeting was held on April 15, 2002 to address Gizaw's alleged inability to follow instructions and complete assignments. Kirian, Carbine, and Gizaw were present at the meeting. Defendants contend that although Gizaw complained about her supervisors, she did not claim that the harassment was because of her national origin. On April 16, 2002 there was another pre-disciplinary meeting. Gizaw, a union representative, the union president, Jones, Lewis, and Malone were in attendance. On April 29, 2002 the IDPA's EEO office approved a request for a three day suspension for Gizaw. Gizaw served the three day suspension beginning on April 29, 2002. On May 6, 2002 there

5

was another pre-disciplinary meeting. In attendance were Gizaw, her union representative, Jones, and Malone. Defendants contend that Gizaw did not claim at the meeting that she was being harassed because of her national origin.

On May 6, 2002 Gizaw filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging discrimination based on race, color, and national origin and retaliation for complaining about the discrimination. On May 10, 2002 IDPA's EEO office approved a request to suspend both Gizaw and Esposito seven days for the March 12, 2002 incident. On May 17, 2002 Gizaw filed a grievance requesting that the suspension be rescinded. Defendants contend that Gizaw did not indicate in the grievance that she was being discriminated against by her supervisors. On May 30, 2002 Gizaw began serving her suspension. Defendants claim that the IDPA EEO office received a letter from the EEOC on May 17, 2002 informing them of the pending charge brought by Gizaw. On May 29, 2002 Gizaw filed an additional charge with the EEOC. Malone denied Gizaw's grievance. On August 1, 2002 at the third level of review of the grievance the IDPA decided to reduce the suspension from seven to five days. On August 16, 2002 Gizaw filed the instant action. On September 13, 2002 Gizaw filed an amended complaint alleging national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count I), retaliation in violation of Title VII (Count II), denial of equal protection as a class of one in violation of 42 U.S.C. § 1983 ("Section 1983") (Count III).

On November 1, 2002 Gizaw received her yearly evaluation. Jones asserted in the evaluation that Gizaw did not meet her job expectations for two out of eight areas. On January 1, 2003 Gizaw was assigned to a new position as the full-time front desk person. Gizaw contends that the front desk job is unusually difficult because it involves contact with clients that are angry and upset. Gizaw contends that she was assigned to the front desk position as a form of punishment because of her national origin. On April 1, 2003 Jones changed jobs and Jerena Hope-Williams, an African-American female, became supervisor.

Defendants previously filed a motion for summary judgment on all claims in this action. On February 12, 2004 we granted the summary judgment motion in part. We denied the motion for summary judgment on the Title VII retaliation claim without prejudice. The reason that we denied the prior motion for summary judgment on the retaliation claim is that both Defendants and Gizaw provided the court with arguments relating to an antiquated standard for Title VII retaliation claims. Since neither side had argued under the proper standard, it would not have been proper for us to argue the positions for the parties. We denied the motion for summary judgment without prejudice because, although the parties did not argue under the proper standard, the summary judgment motion would have served a meritorious purpose. The motion would have allowed the court to determine if there are genuine issues of material fact and therefore avoid the possibility of the case proceeding before the trier of fact at trial who would be unable to make a decision

without resorting to unsubstantiated speculation. Therefore, we denied the motion without prejudice in order to give the parties an opportunity to address the retaliation claim under the proper law.

We note that in Defendant's instant motion Defendants state that our suggested standard for Title VII retaliation claims is merely one alternative standard and Defendants indicate that they are willing to accommodate the court by proceeding under the requested standard. We want to be clear that in allowing Defendants to file another summary judgment motion on the retaliation claim we are not endorsing Defendants' position that the standard set forth in *Stone v. City of Indianapolis Public Utils. Division*, 281 F.3d 640, 644 (7th Cir. 2002) is merely an optional standard for the indirect approach on a Title VII retaliation claim. It is the only standard. There have been a few abberations since *Stone* in the Seventh Circuit, but the Seventh Circuit has made it clear that the standard in *Stone* is the only standard. *See Rogers v. City of Chicago*, 320 F.3d 748, 755 (7th Cir. 2003)(stating that the Seventh Circuit introduced a new analysis for Title VII retaliation claims and that "*Stone* provides the governing rule in this jurisdiction. . . ."); *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 888 -89 (7th Cir. 2004)(indicating that the *Stone* standard is the required standard for Title VII retaliation claims); *Williams v. Waste Management of Illinois*, 361 F.3d 1021, 1031 (7th Cir. 2004)(indicating that the *Stone* standard is the required standard for Title VII retaliation claims); *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir.

2004)(indicating that the *Stone* standard is the required standard for Title VII retaliation claims); *Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004)(indicating that the *Stone* standard is the required standard for Title VII retaliation claims); *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002)(indicating that *Stone* introduced the new standard for indirect analysis).

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."*Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for

summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

A plaintiff can establish a prima facie case for a Title VII retaliation claim under the direct or indirect method of proof. *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). Gizaw has not presented evidence sufficient to proceed under the direct method and will need to proceed under the indirect method of proof. A plaintiff can establish a prima facie case under the indirect method by showing that: 1) she engaged in protected activity, 2) her job performance met the legitimate expectations of her employer, 3) her employer took a materially adverse employment action against her, and 4) she was treated less favorably than similarly situated employees that did not engage in the protected activity. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002)(citing *Stone v. City of Indianapolis*

10

*Pub. Utils. Div. Div.*, 281 F.3d 640, 644 (7th Cir. 2002)). If a plaintiff establishes a prima facie case then the burden shifts to the defendant to produce a legitimate non-discriminatory reason and if one is produced, the burden shifts back to the plaintiff to show that the given reason is a pretext for retaliation. *Id.*

I. Protected Activity

Defendants argue that there is not sufficient evidence that Gizaw engaged in protected activity. Gizaw argues in her answer to the instant motion that she engaged in protected activity when: 1) she wrote a letter to Harlson in July of 2000, 2) she wrote a follow-up memo to Malone in August of 2000 allegedly addressing "possible harassment," 3) Jones told her staff that Gizaw stated that she was being harassed, and 4) she challenged disciplinary actions taken against her with her union representative. She claims that the subsequent harassment was at least in part in retaliation for her complaints. It is not clear that Gizaw engaged in any protected activity, however, we need not address this prong of the *prima facie* case because, as indicated below, there are ample other reasons why summary judgment should be granted on the retaliation claim.

II. Work Performance

Gizaw has not pointed to sufficient evidence for a reasonable trier of fact to conclude that Gizaw was meeting the legitimate expectations of Defendants. Gizaw

admits pursuant to Local Rule 56.1 that on March 12, 2002 at around 2:45 P.M. Gizaw left the work area with Esposito. (RSF 78). Gizaw admits pursuant to Local Rule 56.1 that she did not tell her supervisor that she was leaving her work areas. (RSF 79). Gizaw admits pursuant to Local Rule 56.1 that her work break was not until 3:00 p.m. (RSF 80). Defendants have offered evidence indicating that Gizaw and Esposito returned to the work area while engaging in a loud verbal argument. Gizaw has not offered any evidence which would indicate otherwise. Gizaw admits pursuant to Local Rule 56.1 that on December 21, 1999 Lewis issued a memo indicating that all Region IV clerical staff must advise their supervisor if leaving the work area. (RSF 21). Gizaw responds by providing her own unsubstantiated opinion that in general personnel commonly left the work areas without disciplinary consequences. (SAF 219). Gizaw does not provide any specific incidents or indicate how she knows that the persons never suffered a disciplinary action or even if the supervisors discovered that the persons that Gizaw had in mind left the work area without permission. Gizaw also responds that the policy was changed to allow OCs to go and communicate with other OCs. (RSF 21). Even were this so, Gizaw's response does not contend that an OC was allowed to leave the work area to conduct conversations regarding personal matters. Gizaw also admits pursuant to Local Rule 56.1 that she attended a meeting on February 22, 2001 and understood that there was a policy requiring her to notify her supervisor before leaving her work area. (RSF 44). In regards to the three day suspension, Defendants have also provided ample

evidence that the suspension was warranted. *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 -80 (7th Cir.1997)(stating that "it is no business of a court in a discrimination case to decide whether an employer demands 'too much' of his workers" as long as the employer presents enough evidence that the expectations were bona fide). Based upon the evidence no reasonable finder of fact could conclude that Defendants' expectations were not bona-fide.

### III. Adverse Employment Action

The only actions taken by IDPA against Gizaw that would constitute an adverse employment action would be the three day suspension she began serving on April 29, 2002 and the five day suspension relating to the Esposito incident. *See Grube v. Lau Industries, Inc.*, 257 F.3d 723, 729 (7th Cir. 2001)(stating that "unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions."). Therefore, the reprimands against Gizaw were not adverse employment actions.

### IV. Similarly Situated Employees

An employee is similarly situated if the employee "is one who is 'directly comparable to [the plaintiff] in all material respects.'" *Rogers v. City of Chicago*, 320 F.3d 748, 755 (7th Cir. 2003)(quoting *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002)). Gizaw has also failed to point to a similarly situated employee that

13

was treated differently. Defendants correctly point out that the only similarly situated employee in regards to the Esposito incident was Esposito and Esposito was suspended for seven days which was the same as Gizaw's original suspension before it was reduced. Gizaw has failed to present evidence regarding an employee that is directly comparable to Gizaw.

V. Pretext

Finally, even if Gizaw were able to establish a *prima facie* case, Defendants have provided legitimate non-discriminatory reasons for the actions taken against Gizaw and Gizaw has not provided sufficient evidence for a reasonable finder of fact to find that Defendants' given reasons are a pretext for retaliation. The Esposito incident and Gizaw's work deficiencies and disciplinary history are well documented by Defendants. The main evidence presented by Gizaw in support of her pretext burden are the statements allegedly made by her supervisors. Gizaw does not allege more than one or two isolated comments by any particular supervisor. Such isolated comments are not sufficient to establish pretext. There is no indication by Gizaw that any of the comments were made in coordination with any work-related decision. Therefore, we find that even if Gizaw could establish a *prima facie* case, she has not presented sufficient evidence for a reasonable finder of fact to conclude that Defendants' reasons were a pretext in order to unlawfully retaliate against Gizaw..

In addition Gizaw has not shown that any of the Defendant supervisors had

authority to suspend her. Pursuant to Local Rule 56.1 Gizaw admits that individual supervisors have no authority to impose discipline above an oral reprimand. *See* RSF 68, 69 (evasive denials and no supporting citations for denials)). The Division of Personnel and Administrative Services is solely responsible for such discipline. (RSF 68). Therefore, we grant summary judgment on the Title VII retaliation claim.

## CONCLUSION

Based on the foregoing analysis, we grant the motion for summary judgment on the Title VII retaliation claim.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 10, 2004

15